UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICIA MAYOTTE, individually
and on behalf of others similarly
situated,

        Plaintiff,

        v.                                         Case No. 07-C-0033

ASSOCIATED BANK, N.A.,

        Defendant.

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS**

### I. BACKGROUND

This action began on January 11, 2007, when the plaintiff, Patricia Mayotte ("Mayotte"), individually and on behalf of others similarly situated, filed a complaint in the Eastern District of Wisconsin alleging that the defendant, Associated Bank, N.A., ("Associated"), violated the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and its implementing regulations, 12 C.F.R. § 205 *et seq.* Specifically, in Count I, Mayotte alleges that Associated failed to provide adequate notice of a surcharge fee as required by 12 C.F.R. § 205.16(e), in violation of 15 U.S.C. § 1693(d)(3)(C) when Mayotte, and other class members, used Associated's Automated Teller Machines ("ATM"). (Compl. at ¶¶ 44-7). In Count II, Mayotte claims that the above allegations entitle her and others similarly situated to damages under Wisconsin state law based on the unjust enrichment of Associated, including the disgorgement of all revenue obtained by Associated from customers through illegal ATM fee surcharges during the class period. (Compl. at ¶¶ 48-51).

On March 14, 2007, Associated filed a motion to dismiss Mayotte's complaint in part, pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Mayotte's complaint fails to state a claim upon which relief can be granted. More precisely, Associated has moved to dismiss Count I to the extent that Mayotte seeks to recover actual damages, and has moved to dismiss Count II in total. The defendant's motion to dismiss has been fully briefed and is ready for decision. For the reasons that follow, the defendant's motion to dismiss any claim for actual damages (Count I) will be denied, and the defendant's motion to dismiss any entitlement to damages as a result of unjust enrichment (Count II) will be granted .

## II. DISCUSSION

A motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *see also Eisen v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *See Harrel v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). A complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment

that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969. However, the court is not required to "ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

Mayotte alleges that the Associated ATMs provided inadequate notice of a surcharge fee, in violation of the EFTA and its implementing regulations. Specifically, Mayotte alleges that Associated violated the EFTA by imposing and collecting a surcharge without giving Mayotte proper notice that the ATM "will" charge a transaction fee. Rather, according to Mayotte, the Associated ATM improperly stated that the consumer "may" be charged a transaction fee.

Title 15 U.S.C. § 1693b(d)(3)(C) states, in pertinent part,

(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer. No fee may be imposed by any automated teller machine operator in connection with any electronic funds transfer initiated by a consumer for which a notice is required under subparagraph (A) unless -
    (i)    the consumer received such notice in accordance with subparagraph (B); and
    (ii)    the consumer elects to continue in a manner necessary to effect the transaction after receiving such notice

Title 12 C.F.R. § 205.16(e) states,

(e) Imposition of a fee. An automated teller machine operator may impose a fee on a consumer for initiating an electronic funds transfer or a balance inquiry only if

    (1) The consumer is provided the notice required under paragraph (c) of this section, and
    (2) The consumer elects to continue the transaction or inquiry after receiving such notice.

Title 12 C.F.R. § 205.16 (c) states, in pertinent part,

(c) Notice requirement. To meet the requirement of paragraph (b) of this section, an automated teller machine operator must comply with the following:

> (2) Screen or paper notice. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

Title 12 C.F.R. § 205.16(b) states,

> (b) General. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic funds transfer or a balance inquiry shall:
>
> (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2) Disclose the amount of the fee.

**(a) Actual Damages**

Associated argues that Mayotte's EFTA claim should be dismissed with prejudice to the extent that Mayotte seeks actual damages. Specifically, Associated contends that, under the language of the EFTA, in order to recover actual damages the plaintiff must plead and prove detrimental reliance. According to Associated, Mayotte did not allege in her complaint that she incurred damages as a result of Associated's alleged EFTA violation, or that she relied on the allegedly defective screen notice when she entered into the ATM transaction.

Title 15 U.S.C. § 1693m(a)(1) discusses actual damages and states, in pertinent part:

> (a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in an amount equal to the sum of - -
>
> (1) any actual damages sustained by such consumer as a result of such failure;

Associated contends that the plain meaning of the phrase "as a result of such failure" necessarily implies that a plaintiff must plead and prove detrimental reliance in order to recover

4

actual damages. As further support, Associated notes that other courts have held that § 1693m(a)(1) requires the plaintiff to establish detrimental reliance. *See Brown v. Bank of America*, 457 F. Supp. 2d 82 (D. Mass. 2006); *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 408 (M.D. Fla. 2004) (in denying class certification, stating that the plaintiff "offers no authority for his inference that EFTA excuses plaintiffs from proving that their actual damages flowed from a detrimental reliance on erroneous fee postings."); *Martz v. PNC Bank, N.A.*, 2006 WL 3840354, *5 (W.D. Pa. 2006) ("The few reported cases that have discussed the actual damages provision of EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the form of detrimental reliance.").

In *Brown v. Bank of America*, the court held that under the EFTA's actual damages provision, "[i]n order to recover actual damages, Plaintiffs must establish causation of harm through detrimental reliance." 457 F. Supp. 2d at 90. At issue in *Brown* was whether the plaintiff was entitled to actual damages for the defendant's failure to post a fee notice on a prominent and conspicuous location on the ATM machine, in violation of 15 U.S.C. § 1693b(d)(3)(B)(i).[1] As support for this conclusion, the court looked to case law interpreting an identical damages provision of the Truth in Lending Act ("TILA"), another banking consumer protection law. *Id*. (citing *Johnson v. West Suburban Bank*, 225 F.3d 366, 378-79 (3d Cir. 2000) (finding that the identical class action language in TILA and

---

[1] 15 U.S.C. § 1693b(d)(3)(B)(i) states:

> (B) Notice requirements.
>     (i) On the machine. The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

5

EFTA had identical substantive meaning because "we do not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes.")). The relevant provision under TILA provided for recovery for "any actual damage sustained by such a person as a result of the [defendant's] failure." 15 U.S.C. § 1640(a)(1). In reaching its conclusion regarding the actual damages provision of the EFTA, the court noted that courts interpreting TILA had held that "damages and causation must be shown" in order to recover actual damages under TILA. *Brown*, 457 F.Supp.2d at 90 (quoting *Bizier v. Globe Financial Servs., Inc.*, 654 F.2d 1, 4 (1st Cir. 1981); *see also Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (finding that the "language indicates that the statute's authors intended that plaintiffs must demonstrate detrimental reliance in order to be entitled to actual damages under TILA."); *see also Smith v. Gold County Lenders*, 289 F.3d 1155, 1157 (9th Cir. 2002); *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir. 2000).

Although I conclude that the plain language of § 1693m(a)(1) requires that Mayotte show causation and harm in order to recover actual damages, I am unable to conclude that Mayotte must show causation of harm through detrimental reliance. To be sure the phrase "as a result of" in § 1693m(a)(1) (and in the corresponding actual damages provision of TILA) indicates that in order to recover actual damages, the alleged violation must be the cause of the harm. However, this phrase does not necessarily mean that causation of harm must be proven through a showing of detrimental reliance. Rather, whether a showing of detrimental reliance is required to prove causation of harm is dependent on the specific statutory provision alleged to have been violated.

As noted above, Associated has cited to cases which indicate that EFTA's actual damages provision requires a showing of detrimental reliance in order to recover actual damages for a

6

violation of the EFTA's notice provisions.  However, Mayotte alleges a violation of 15 U.S.C. § 1693b(d)(3)(C), which prohibits the imposition of fees without giving proper notice.  This statutory provision regarding the imposition of fees is not merely a provision outlining the requirements of proper notice, as in 12 C.F.R. § 205.16(b) or 15 U.S.C. § 1693b(d)(3)(B)(i).  Moreover, this provision is also unlike analogous provisions in TILA, which outline the requirements for disclosures by a creditor.  *See* 15 U.S.C. § 1638(a) ("Required disclosures by creditor. For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable . . .").

This distinction between a statutory provision prohibiting the imposition of fees and a statutory provision requiring proper notice, although not affecting an analysis of whether Associated violated the EFTA (as proof of improper notice is required to establish a violation of both 12 C.F.R. § 205.16(b) and § 1693b(d)(3)(C)), is relevant to an analysis of whether causation and harm must be established through detrimental reliance.  Under the actual damages statute, the plaintiff is only entitled to actual damages which are "as a result" of the defendant's failure to comply with the statute.  For violations of 12 C.F.R. § 205.16(b), a defendant would fail to comply with the EFTA if the ATM provided the consumer with improper notice on the screen.  As such, in order to recover actual damages for a violation of this particular provision, a plaintiff would have to show that her damages were "as a result" of the defendant's providing her with improper notice.  In other words, a plaintiff would have to show that her use of the ATM and subsequent payment of the fee was caused by her reliance on the allegedly defective notice.  Therefore, a requirement that the plaintiff detrimentally relied on the allegedly defective notice on the screen to recover actual damages for

7

violations of 12 C.F.R. § 205.16(b) is consistent with the language of the EFTA, as well as the case law cited to by Associated.

In contrast, for violations of 15 U.S.C. § 1693b(d)(3)(C), a defendant would fail to comply with the EFTA if it *charged a fee* without providing proper notice. Although improper notice is an element of this statutory provision, the actual violation is not predicated on defective notice as in 12 C.F.R. § 205.16(b), but rather is predicated on the improper imposition of a fee. Such being the case, in order to recover actual damages for alleged violations of 15 U.S.C. § 1693b(d)(3)(A), a plaintiff would have to show that her damages were "as a result" of the defendant's improperly *charging her a fee*. Given that Mayotte's alleged actual damages are her payment of the fee, the improper charging of this fee would arguably be the cause of her damages. Stated another way, Mayotte's payment of the fee would be "as a result of" Associated's improper imposition of the fee. Given that the alleged violation itself is arguably the cause of Mayotte's alleged actual damages, detrimental reliance is not needed to prove causation.

In sum, as Mayotte's has alleged in her complaint that she suffered damages by paying an ATM fee, and that Associated charged her this fee in violation of 15 U.S.C. § 1693b(d)(3)(C), Mayotte's complaint contains sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965. The defendant's motion to dismiss Count I to the extent the plaintiff seeks to recover actual damages will therefore be denied.

**(b) Unjust Enrichment**

In Wisconsin, "the doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d, 653, 671, 553 N.W.2d 257, 265 (Wis. Ct. App. 1991)*; see also Continental Casualty Co. v. Wisconsin Patients*

*Compensation Fund*, 614 Wis.2d 110, 118, 472 N.W.2d 584, 587 (Wis. Ct. App. 1991) (citing *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303, 313 (1987)).

Associated argues that Mayotte entered into a contract with Associated by undertaking and completing the ATM transaction, and therefore, under Wisconsin law, may not state a claim for unjust enrichment. Specifically, Associated contends that a contract is formed when an ATM user, such as Mayotte, presses the "YES" button on the click-through screen and thereby agrees to continue the transaction and accept the imposition of a fee. In support, Associated cites to a copy of the click-through screen of ATMs operated by Associated in June 2006 through the present, which is attached to the affidavit of Lorraine Avery.[2] In Mayotte's complaint, she alleges that she used an Associated ATM in Milwaukee, WI on or about June 26, 2006. According to Avery's affidavit and the attached copy of the ATM screen at issue, the ATM displays the following screen:

> THIS ASSOCIATED BANK TERMINAL MAY CHARGE A FEE OF $2.00 FOR A CASH WITHDRAWAL.
> THIS CHARGE IS IN ADDITION TO ANY FEES THAT MAY BE ASSESSED BY YOUR FINANCIAL INSTITUTION.
>
> DO YOU WISH TO CONTINUE THIS TRANSACTION?
>
> IF YES PRESS TO ACCEPT FEE -------------------------------- -->

---

[2] The defendant may refer to the full text of the ATM screen display, without converting this motion to dismiss into a motion for summary judgment, because the plaintiff references the ATM screen of Associated ATMs used in June 2006 in her complaint. The contents of this screen form the central basis for her claim. *Cf., e.g., Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431-432 (7th Cir. 1993) ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") The plaintiff does not dispute that all Associated ATM screens are identical; nor does she dispute that this is an accurate depiction of the screen which contains the allegedly defective notice.

IF NO PRESS TO DECLINE FEE ------------------------------ -->

In further support of its argument, Associated cites to language in the EFTA that characterizes ATM transactions as contractual, as the EFTA states that "a consumer contracts for an electronic fund transfer service." 15 U.S.C. § 1693c(a).

Based on the facts alleged by Mayotte, I conclude that Mayotte entered into a contract with Associated by completing the ATM transaction. Mayotte agreed to (potentially) be charged a fee in return for her receipt of cash from the ATM, thus forming a contract.

Indeed, Mayotte does not dispute that she entered into a contract with Associated through her use of the ATM. Rather, Mayotte contends that this contract violates federal law, and is therefore illegal and unenforceable. *See Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 752, 433 N.W.2d 654 (Wis. Ct. App. 1988) (noting that "[c]ontractual provisions agreed to by competent parties are valid and enforceable unless they violate either a statute, a rule of law or public policy.").

Under Wisconsin law, a party not at fault "may have restitution of benefits conferred under an illegal contract." *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 717, 298 N.W.2d 217, 220 (Wis. Ct. App. 1980) (citing *General Split Corp. v. P & V Atlas Corp.*, 91 Wis.2d 119, 125, 280 N.W.2d 765, 769 (Wis. 1979); *see also* Restatement (Third) of Restitution and Unjust Enrichment ("A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution . . . whether or not necessary to prevent unjust enrichment, if restitution is required by the policy of the underlying prohibition."). "A contract is illegal where its formation or performance is expressly forbidden by a civil or criminal statute or where a penalty is imposed for doing the act agreed upon." *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 716-17, 298 N.W.2d 217, 220 (Wis. Ct. App. 1980).

10

Mayotte argues that because the EFTA prohibits ATM operators from collecting a transaction fee without giving proper notice, the contract is illegal and unenforceable, and restitution is still available under the doctrine of unjust enrichment. However, the mere fact that a provision of the contract may be in violation of a federal statute does not necessarily render the contract illegal and unenforceable.

The Wisconsin Supreme Court has stated that "[n]ot all such contracts are void . . . . To determine whether a statute . . . is intended to render unenforceable contracts which conflict with its provisions, the intent and purpose of the legislature should be considered and ascertained." *Chapman v. Zakzaska*, 273 Wis. 64, 66, 76 N.W.2d 537, 538 (Wis. 1956). "'Legislative intent must be sought in each particular case, and though it is generally true that the imposition of a penalty for entering into a bargain or performing an act that is the subject matter of the bargain makes the bargain illegal, that is not invariably the case.'" *Id*. at 67, 76 N.W.2d at 539 (quoting Restatement, 2 Contracts, p. 1088, sec. 580, comment a). Moreover, a contract is not rendered void and unenforceable if the illegality does not "permeate the contract so as to furnish the reason for it and the foundation upon which it rests so as to make applicable the rule so generally and sometimes unnecessarily broadly stated that all contracts prohibited by statute are void and unenforceable." *Id*. at 68, 76 N.W.2d at 539.

Despite the alleged violation of the federal statute, I conclude that the contract entered into between Mayotte and Associated is nevertheless valid and enforceable. To be sure, Mayotte alleges that the contract is illegal and unenforceable because the notice screen violates the EFTA. However, the subject matter of the contract, namely the providing of ATM services to Mayotte in exchange for the payment of a fee, is not illegal under the EFTA. The purpose of the EFTA is not to prohibit these

11

types of transactions, but rather to insure that these transactions are conducted in such a way as to protect the rights of individual consumers.

Moreover, the alleged illegality in this case does not permeate the contract so as to render it void and unenforceable. In exchange for her withdrawal of cash from the ATM, Mayotte agreed to accept a potential fee, which was specified to be $2.00. At the very least, Mayotte knew that there was a chance she would be charged $2.00 when she pressed "YES" to accept the fee. Mayotte received the cash that she requested, and was eventually charged the $2.00 she agreed to possibly be called upon to pay. Given these circumstances, I cannot say that the use of the word "may" rather than "will" so permeates the contract so as to form the foundation for the contract. The basis of this contract, namely the receipt of money in exchange for consenting to pay a potential fee, is essentially the same as that of other ATM transactions in which the consumer is advised that he "will" be charged a fee. And this latter factual scenario would clearly not be in violation of the EFTA.

Mayotte also contends that the contract is too indefinite to be enforceable. *See Petersen v. Pilgrim Village*, 256 Wis. 621, 624, 42 N.W.2d 273, 274 (Wis. 1950) ("An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."). "Vagueness or indefiniteness as to an essential term of the agreement prevents the creation of an enforceable contract, because a contract must be definite as to the parties' basic commitments and obligations." *Management Computer Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67, 75 (Wis. 1996). The definitiveness requirement is often described as a "meeting of the minds." *Id*. at 178, 557 N.W.2d at 75. However, "this does not mean that parties must subjectively agree to the same interpretation

12

at the time of contracting." *Id.*, 557 N.W.2d at 75. Rather, "mutual assent is judged by an objective standard, looking to the express words the parties used in the contract." *Id.*, 557 N.W.2d at 75.

I conclude that the terms of the ATM contract in this case are sufficiently definite such that the contract is enforceable. To be sure, Mayotte argues that the contract terms are indefinite because they give Associated unfettered discretion as to whether to impose the fee. However, this potential discretion does not make the contract terms indefinite. The terms of the screen notice were sufficiently definite as to make Mayotte fully aware of her potential obligations under the contract. Namely, Mayotte was aware that in return for her receiving cash from the ATM, she might be called upon to pay a fee of $2.00. When Mayotte received the cash from the ATM, Mayotte knew that she might have to pay the $2.00. Simply stated, the terms of the contract were sufficiently definite both as to the benefit Mayotte would receive and as to the obligations which would potentially be imposed in order for her to receive this benefit.

Furthermore, even assuming the contract was unenforceable, Mayotte still cannot recover under the doctrine of unjust enrichment because she received the compensation specified by the parties' ATM contract. Under the Restatement (Third) of Restitution and Unjust Enrichment § 32, which was quoted by Mayotte in support of her unjust enrichment claim, "[t]here is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement." This interpretation is consistent with Wisconsin law. *See Bersch & Co. v. Dairyland Greyhound Park*, 185 Wis. 916 (Wis. Ct. App. 1994) (noting that it is well-settled that "unjust enrichment does not apply where one has received the compensation called for in a contract"); *Venisek v. Draski*, 35 Wis. 2d 38, 50, 150 N.W.2d 347, 353 (Wis. 1967) ("The general rule is that both at law and in equity a court will not aid either party to an illegal agreement, whether executory

13

or executed, but leaves the parties where it finds them."); *Lawlis v. Thompson*, 137 Wis. 2d 490, 498, 405 N.W.2d 317, 320 (Wis. 1987) ("The jurisprudence of unjust enrichment in Wisconsin is consistent with that found in the recognized treatises and encyclopedias," including the Restatement of Restitution and Unjust Enrichment).

Here, Mayotte received the counterperformance specified by the parties' allegedly unenforceable agreement when she received her cash from the ATM. The receipt of money is the benefit Mayotte bargained for when consenting to the (at least potential) imposition of a fee. Under the Restatement (Third) and Wisconsin law, because Mayotte received the "counterperformance specified by the parties' (allegedly) unenforceable agreement," her claim for unjust enrichment fails to state a claim upon which relief can be granted.

Associated also argues that Mayotte's unjust enrichment claim should be dismissed because it is barred by the voluntary payment doctrine, and that Mayotte cannot satisfy the required elements for proving an unjust enrichment claim. Moreover, Associated contends that Mayotte's unjust enrichment claim is is inconsistent with, and therefore, preempted by the EFTA. *See* 15 U.S.C. § 1693q ("This title does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of this title, and then only to the extent of the inconsistency."). However, given that Mayotte's unjust enrichment claim will be dismissed for the reasons specified above, it is unnecessary to address these arguments.

In sum, Mayotte's unjust enrichment claim will be dismissed because the relationship between her and the defendant is founded in contract, and the alleged illegality in connection therewith does not permeate the contract such that it is rendered void and unenforceable.

14

Furthermore, even assuming the contract is unenforceable, Mayotte cannot state a claim for unjust enrichment because she received the counterperformance specified by the parties' ATM agreement.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss be and hereby is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 17th day of August 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge